**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| P.N., Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant. | **Civil Action No. 24-11391 (SRC)** **OPINION** |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff P.N. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, filed August 25, 2020, alleging disability beginning July 1, 2019. The claim was denied initially on August 9, 2021 and upon reconsideration on March 17, 2022. Plaintiff then filed a written request for a hearing, which was held before ALJ Kenneth Ayers (the "ALJ") on November 30, 2022. The ALJ issued an unfavorable decision on March 16, 2023. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the March 16, 2023 decision, the ALJ found that, at step three, Plaintiff did not meet or

equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels as defined in 20 C.F.R. 404.1567(b), with certain additional nonexertional limitations. At step four, the ALJ also found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy that the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff has not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and remanded because, at step four, the RFC determination is not supported by substantial evidence because the ALJ failed to 1) properly evaluate the limitations from Nevins's mental impairments and 2) include limitations from Nevins's headaches.

In reviewing the ALJ's determination, this Court must affirm the Commissioner's final decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Further, on appeal, Plaintiff carries twin burdens of proof. First, Plaintiff bears the burden at the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Second, Plaintiff bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). At the first four steps, this requires that Plaintiff show that, but for the error, he might have proven his disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he

is quite unlikely to show that an error was harmful.

For a district court to be able to find that an ALJ's opinion is supported by substantial evidence, that ALJ must explain his reasoning such that his determination is amenable to meaningful review. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). While the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis," she must provide "sufficient . . . explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

This Court is not persuaded by Plaintiff's first argument that the ALJ failed to properly evaluate the limitations from his mental impairments, because Plaintiff failed to articulate what exactly the ALJ did that was improper and which rule or point of law was violated by what was done. Moreover, at step four, Plaintiff does not identify the "admitted mental limitations" that he contends were omitted and cites no law that imposes on the Commissioner a requirement to explain why the mental limitations do not have a greater impact on his ability to work. Plaintiff, in essence, asks this Court to review the record *de novo* and reweigh the evidence, which it may not do. The Third Circuit has held:

> A federal court's substantial-evidence review is "quite limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). A court may not weigh the evidence or substitute its own findings for the Commissioner's. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). [Plaintiff's] arguments amount to a request to reweigh the evidence and review the Commissioner's findings and decision *de novo*.

Davern v. Comm'r of Soc. Sec., 660 Fed. Appx. 169, 173-74 (3d Cir. 2016). See also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ("Neither the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."). At step four, § 405(g) tasks this Court only with evaluating whether the factual determinations on which the RFC determination is made are supported by substantial evidence, which simply

requires a finding of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Since Plaintiff's argument concerning the ALJ's determinations about "mental limitations" essentially asks this Court to reweigh the evidence, it is without merit.

Plaintiff also recites the ALJ's findings concerning the paragraph B criteria of the 12.00 Listings at step three. (Pl.'s Br. at 28-29.) Plaintiff does not, however, explain the relevance of the step three paragraph B findings to the RFC determination at step four. Under Third Circuit law:

> [N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways. . . . In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019). Pursuant to Hess, the ALJ's findings at step three do not necessarily translate into particular findings at step four. The "arguments" section of Plaintiff's opening brief begins with a challenge to the RFC determination at step four, but then, without explanation, jumps to the discussion of the paragraph B criteria at step three. As just explained, under Third Circuit law, the analyses at steps three and four are "distinct." 931 F.3d at 209.

To the extent that Plaintiff challenges the Commissioner's step three determination that Plaintiff does not meet any of the Listings, Plaintiff's argument suffers from two principal defects: 1) its failure to deal with the issue of the burden of proof at the first four steps of the sequential evaluation process; and 2) its failure to deal with the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v.

Yuckert, 482 U.S. 137, 146 n.5 (1987).

As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination. The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. In such a case, "the claimant has the 'burden' of showing that an error was harmful." Id. at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in her favor, based on the existing record, she is quite unlikely to show that an error was harmful. Plaintiff's challenge to the step three determination fails to meet the requirements of Shinseki: Plaintiff has not identified a specific Listing that the ALJ overlooked, nor did Plaintiff muster evidence of record that might support a determination at step three that he met the requirements of that specific Listing. Having not offered either, Plaintiff cannot demonstrate that any error at step three was harmful.

Next, we turn to Plaintiff's second argument that the ALJ's decision should be vacated because he failed to include limitations from Plaintiff's headaches. This Court finds that the ALJ erred at step two in determining that Plaintiff's headaches were not a medically determinable impairment, and at step four because he failed to evaluate whether they had an impact on Plaintiff's RFC. While the ALJ references the headaches in his RFC determination, he did not make a determination as to whether or not they impacted Plaintiff's ability to work. Thus, with regard to the headaches, the Court lacks the information it needs to assess whether the ALJ's decision to

omit consideration of the headaches at step four is supported by substantial evidence.

At step two, the ALJ found that the headaches were not medically determinable ailments under SSR 19-4p. The Social Security Administration issued SSR 19-4p to "explain [its] policy on how [it] establish[es] that a person has an MDI [Medically Determinable Illness] of a primary headache disorder and how [it] evaluate[s] primary headache disorders in disability claims." SSR 19-4p. SSR 19-4p defines primary headache disorders as:

> a collection of chronic headache illnesses characterized by repeated exacerbations of overactivity or dysfunction of pain- sensitive structures in the head. Examples of common primary headaches include *migraines*, *tension-type headaches*, and *trigeminal autonomic cephalalgias*. They are typically severe enough to require prescribed medication and sometimes warrant emergency department visits. SSR 19-4p(1).

SSR 19-4p provides the following definitions of tension-type headaches and migraines:

> "*Migraines* are vascular headaches involving throbbing and pulsating pain caused by the activation of nerve fibers that reside within the wall of brain blood vessels traveling within the meninges (the three membranes covering the brain and spinal cord). There are two major types of migraine: *Migraine with aura* and *migraine without aura*. Migraine with aura is accompanied by visual, sensory, or other central nervous system symptoms. Migraine without aura is accompanied by nausea, vomiting, or photophobia (light sensitivity) and phonophobia (sound sensitivity). Migraine without aura is the most common form of migraine." SSR 19-4p(1).
>
> *Tension-type headaches* are characterized by pain or discomfort in the head, scalp, face, jaw, or neck, and are usually associated with muscle tightness in these areas. There are two types of tension-type headaches: episodic and chronic. Episodic tension-type headaches are further divided into infrequent episodic tension-type headaches, which typically do not require medical management, and frequent episodic tension-type headaches, which may require medical management. Chronic tension-type headaches generally evolve from episodic tension-type headaches. Chronic tension-type headaches and frequent episodic tension-type headaches may be disabling depending on the frequency of the headache attacks, type of accompanying symptoms, response to treatment, and functional limitations.

SSR 19-4p(1). Under SSR 19-4p, a primary headache disorder is established as an MDI by "considering objective medical evidence (signs, laboratory findings, or both) from an AMS

[Acceptable Medical Source]." SSR 19-4p(7). Only a primary, not secondary, headache disorder may be established as an MDI. The following findings made by an AMS should be considered in establishing a primary headache disorder as an MDI: 1) A primary headache disorder diagnosis from an AMS; 2) An observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an AMS; 3) Remarkable or unremarkable findings on laboratory tests; and 4) Response to treatment. *Id.* SSR 19-4p notes that "[w]hile imaging may be useful in ruling out other possible causes of headache symptoms, it is not required for a primary headache disorder diagnosis." SSR 19-4p(2).

This Court finds that the ALJ erred at step two because he did not properly evaluate Plaintiff's headaches in accordance with SSR 19-4p. At step two, the ALJ determined that Plaintiff failed to establish that his headaches were an MDI under SSR 19-4p. The ALJ provided the following summary of the medical record regarding Plaintiff's headaches:

> The claimant has alleged having headaches. However, this is a symptom, not related to a medically determinable impairment. Tension headaches and cervicalgia were noted at Exhibit 2F. In March 2019, a neurologist diagnosed the claimant with tension headache. Neurological examination was normal. An MRI of the brain in April 2019, was unremarkable. (Exhibit 2F). In addition, migraines were noted by a consultative examiner at Exhibit 5F, based solely on the self-reports of the claimant. This was a one-time evaluation with no imaging performed. There were no positive, focal neurological findings on exam.

(Tr. 1631). The ALJ stated that "[t]he medical evidence of record does not meet the criteria of SSR 19-4p for his headaches to be considered a medically determinable impairment." (Tr. 1631.). This Court finds that the ALJ erred in this determination that the evidence does not meet the criteria of SSR 19-4p.

The Court finds sufficient evidence in the medical record to establish a primary headache diagnosis under SSR 19-4p. On December 26, 2018, Dr. Seth R. Stoller diagnosed Plaintiff with "intractable" tension headaches, both primary and cervicalgia, occurring daily for a period of two

years. (Tr. 2341-2345.). Dr. Stoller prescribed gabapentin and physical therapy as treatment. (*Id.*) Plaintiff was again diagnosed with headaches on March 9, 2020, by Molly Lawrence, APN, (Tr.2354), and on April 30, 2020 (Tr. 2355) and March 8, 2021 by Dr. Michael Cannella. (Tr. 2407). During this time, Plaintiff's medical providers continued to prescribe gabapentin as treatment. Plaintiff was also diagnosed with migraine headaches by Dr. Ronald Bagner on April 29, 2021. (Tr. 2375-2378). On May 28, 2021, Plaintiff reported severe headaches to Jane Esposito, Psy.D. (Tr. 2379-2381). On October 24, 2021 he reported headaches during an evaluation at the Adult Crisis Center. (Tr. 2464-2514). Given the medical evidence indicating that Plaintiff was diagnosed with primary headache disorder by multiple physicians, according to SSR 19-4p, the ALJ erred in determining that the headaches did not qualify as a severe impairment. The ALJ erred in the application of SSR 19-4p.

Furthermore, the ALJ's failure to find that the headaches were a severe impairment at step two is an error under Third Circuit law. The Third Circuit has interpreted the relevant Rulings and Regulations to hold that "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The Newell Court further emphasized:

> An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 SSR LEXIS 19 at *6-8. Only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. *See Bowen*, 482 U.S. at 158 (O'Connor, J., concurring). If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. *See Smolen v. Chater*, 80 F.3d at 1290. Reasonable doubts on severity are to be resolved in favor of the claimant.

Newell, 347 F.3d at 546; accord McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) ("The burden placed on an applicant at step two is not an exacting one. . . . Any doubt as to whether

this showing has been made is to be resolved in favor of the applicant."). In McCrea, the Third Circuit reaffirmed the severity standard announced in Newell and added that, in light of the low threshold for severity, findings that an impairment is not severe "should be reviewed with close scrutiny" and are "certain to raise a judicial eyebrow." McCrea, 370 F.3d at 357. Therefore, based upon the medical record, the ALJ should have found that Plaintiff's headaches were a severe impairment.

In opposition, Defendant argues that the ALJ considered Plaintiff's headaches pursuant to SSR 19-4p. That, the Court finds, as already explained, is precisely what the ALJ *failed* to do. Moreover, while the ALJ's opinion makes reference to Plaintiff's headaches in his step four analysis, he does not make any determination as to whether or not the headaches impacted Plaintiff's ability to work.

SSR 19-4p(9) provides the following guidance for assessing whether headaches have an impact on RFC:

> If a person's primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the sequential evaluation process, we assess the person's residual functional capacity (RFC). We must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC. The RFC is the most a person can do despite his or her limitation(s). 19-4p(9).

The ALJ's opinion does not follow this guidance. In fact, the ALJ's opinion makes only passing reference to the headaches in summarizing Plaintiff's medical history at step four. It fails however, to assess whether the headaches limited his ability to work, as required by SSR 19-4p.

The ALJ's failure to make any determination about the limiting effects of Plaintiff's headaches constitutes reversible error on two grounds. First, as just explained, the ALJ failed to follow the requirements of SSR 19-4p. Second, it prevents this Court from conducting a meaningful review of the implicit conclusion that the headaches have no effect on the ability to

work, because there is no analysis at step four to review. The decision is not amenable to meaningful review under Burnett. Unlike the analysis of Plaintiff's mental impairments, the ALJ did not make *any* determination regarding the limiting effect of Plaintiff's headaches. Therefore, his analysis does not permit meaningful review and the decision must be vacated and remanded, both for error in the application of SSR 19-4p and because the step four RFC determination is not amenable to meaningful review under Burnett.

In sum, the ALJ's failure to determine whether the headaches limited Plaintiff's ability to work has made it impossible "to permit meaningful review." Jones, 364 F.3d at 505. And where a court cannot meaningfully review an ALJ's decision, "remand is warranted." Hendry v. Comm'r of Soc. Sec., 2018 WL 4616111, at *15 (D.N.J. Sept. 26, 2018).

For the reasons set forth above, this Court finds that the Commissioner erred in the application of SSR 19-4p and also that the Commissioner's decision is not amenable to meaningful review, pursuant to Burnett. The decision of the Commissioner is vacated and remanded for further proceedings in accordance with this Opinion.

s/ Stanley R Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: October 13, 2026